IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID FOZARD and<br>CANDACE FOZARD | §<br>§<br>§<br>§<br>§ | PLAINTIFFS |
| v. | § | Civil No. 1:21cv358-HSO-BWR |
| | §<br>§ | |
| KNAUF GIPS KG and<br>KNAUF NEW BUILDING<br>SYSTEM (TIANJIN) CO. LTD. | §<br>§<br>§ | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS KNAUF GIPS KG AND KNAUF NEW BUILDING SYSTEM (TIANJIN) CO. LTD.'S MOTION [26] TO EXCLUDE THE EXPERT TESTIMONY OF HOWARD EHRSAM AND SHAWN MACOMBER**

BEFORE THE COURT is Defendants Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd.'s Motion [26] to Exclude the Expert Testimony of Howard Ehrsam and Shawn Macomber. After due consideration of the Motion [26], the parties' submissions, and relevant legal authority, the Court finds that the Motion [26] should be granted and Plaintiffs David and Candace Fozard's experts Howard Ehrsam and Shawn Macomber should be excluded from testifying at trial.

I. BACKGROUND

A. Factual background

Rebuilding efforts following Hurricanes Rita and Katrina led to a supply shortage of building materials, which resulted in the importation and subsequent installation of drywall manufactured in China into homes and buildings across the

1

United States. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 14-2722, 2020 WL 2425783, at *1 (E.D. La. May 12, 2020). One such home, which contained Chinese drywall manufactured and distributed by Defendants Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd. (collectively "Knauf" or "Defendants"), was purchased by Plaintiffs David Fozard and Candace Fozard (collectively "Plaintiffs") in Diamondhead, Mississippi, on March 19, 2015. *See* Ex. [28-1] at 2. Plaintiffs allegedly discovered that the home contained Chinese drywall in January 2017. *Id.*

In their Complaint [1] filed November 14, 2021, Plaintiffs make general allegations that Defendants' drywall "react[s], break[s] down, and release[s] sulfur compounds and other noxious gases" that were exposed to Plaintiffs' "home, structures, personal property, and bodies . . . ." Compl. [1] at 9. Plaintiffs assert that the Chinese drywall was "unreasonably dangerous in its normal use" and caused damage to "Plaintiffs' home and/or caused personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm." *Id.* at 10. Other alleged damages in the Complaint [1] include remediation costs to repair the home, alternative living expenses, personal property damage, devaluation of the home, and loss of use of the home. *Id.*

B.   Procedural history

This case is one of fifteen similar cases currently pending in this District relating to the installation of Chinese drywall in homes across the Mississippi Gulf

2

Coast.[1] These cases were originally part of a class action brought in the Northern District of Alabama, but were designated, along with other Chinese drywall cases from Florida, Louisiana, Alabama, Virginia, Texas, and North Carolina, for transfer to multidistrict litigation ("MDL") and consolidated for pretrial proceedings in the Eastern District of Louisiana. *See Bennett v. Gebrueder Knauf Verwaltungsgesellschaft KG*, 5:14-cv-02204-LCB (N.D. Ala. filed Nov. 13, 2014); *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 680 F. Supp. 2d 780, 782 (E.D. La. 2010) (hereinafter "*In re Chinese Drywall 2010*"). Upon conclusion of proceedings in the MDL, these cases were remanded to the Northern District of Alabama. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.,* No. MDL 2047, 2021 WL 50455 (U.S. Jud. Pan. Mult. Lit. Jan. 5, 2021). On September 23, 2021, all plaintiffs whose claims involved property outside the Northern District of Alabama were severed from the *Bennett* action, *see Bennett v. Gebrueder Knauf Verwaltungsgesellschaft KG*, 5:14-cv-02204-LCB (N.D. Ala. Sept. 23, 2021) (Order Severing Plaintiffs), and Plaintiffs with property in the Southern District of Mississippi filed Complaints here on November 14 and 15, 2021, *see, e.g.*, Compl. [1]

---

[1] *See Cain v. Knauf Gips KG*, 1:21-cv-355-HSO-BWR (S.D. Miss. filed Nov. 14, 2021); *Christovich v. Knauf Gips KG*, 1:21-cv-356-LG-BWR (S.D. Miss. filed Nov. 14, 2021); *Ferry v. Knauf Gips KG*, 1:21-cv-357-TBM-RPM (S.D. Miss. filed Nov. 14, 2021); *Fussell v. Knauf Gips KG*, 1:21-cv-359-HSO-BWR (S.D. Miss. filed Nov. 14, 2021); *Gauthreaux v. Knauf Gips KG*, 1:21-cv-360-TBM-RPM (S.D. Miss. filed Nov. 14, 2021); *Green v. Knauf Gips KG*, 1:21-cv-361-TBM-RPM (S.D. Miss. filed Nov. 15, 2021); *Humphries v. Knauf Gips KG*, 1:21-cv-362-TBM-RPM (S.D. Miss. filed Nov. 15, 2021); *Lafontaine v. Knauf Gips KG*, 1:21-cv-363-HSO-BWR (S.D. Miss. filed Nov. 15, 2021); *Lee v. Knauf Gips KG*, 1:21-cv-364-LG-BWR (S.D. Miss. filed Nov. 15, 2021); *Martino v. Knauf Gips KG*, 1:21-cv-366-HSO-BWR (S.D. Miss. filed Nov. 15, 2021); *McCullar v. Knauf Gips KG*, 1:21-cv-367-HSO-BWR (S.D. Miss. filed Nov. 15, 2021); *Payton v. Knauf Gips KG*, 1:21-cv-368-TBM-RPM (S.D. Miss. filed Nov. 15, 2021); *Tran v. Knauf Gips KG,* 1:21-cv-369-HSO BWR (S.D. Miss. filed Nov. 15, 2021); *Caranna v. Knauf Gips KG*, 1:21-cv-370-HSO-BWR (S.D. Miss. filed Nov. 15, 2021).

(filed on November 14, 2021). On May 13, 2024, the Court granted in part and denied in part Defendants' Motion [28] for Summary Judgment, and dismissed Plaintiffs' claims not brought under the Mississippi Products Liability Act ("MPLA") and claims for punitive damages. *See* Order [37] at 1. Only Plaintiffs' claims under the MPLA remain. *Id.*

C.  Plaintiffs' experts' reports

Plaintiffs have designated Howard Ehrsam ("Ehrsam") and Shawn Macomber ("Macomber") to offer expert testimony in this case. Ehrsam is an expert in the fields of general contracting, land development, consulting, and civil engineering, and was retained to offer testimony on the general effects of Chinese drywall. Ehrsam Expert Report [26-2] at 3-4. At the time he was retained, Ehrsam had eleven years of experience in developing Chinese drywall inspection protocols, training videos, testing procedures, and corrosion detection systems. *Id.* at 4.

Macomber is a certified defective drywall consultant, remediator, and residential building inspector, and has performed Chinese drywall inspections and remediations since 2009. Macomber Expert Report [26-4] at 4. Macomber was retained to assist the jury in calculating a potential damages award by projecting the cost of remediating Plaintiffs' home. *Id.* at 5.

1.  Howard Ehrsam's Expert Report [26-2]

According to Ehrsam's Report [26-2], he was retained to provide "generic expert opinions" on:

> 1. Whether defective Knauf drywall produces gasses and what gasses are emitted;

4

> 2. Whether defective Knauf drywall off gassing causes corrosion in the home and the extent of that corrosion;
>
> 3. Whether defective Knauf drywall causes damage to components in a home and which typical components (wiring, plumbing, a/c, etc.);
>
> 4. Whether defective Knauf drywall causes damage to personal property in the home and which items or contents are affected (computers, televisions, etc.); and,
>
> 5. Explain[ing] the difference between defective Knauf drywall and domestic-made drywall and the off-gassing that has been known to occur by each.

Ehrsam Expert Report [26-2] at 5. Ehrsam's Report [26-2] purports to "substantiate and explain the corrosive effects of KPT drywall on various interior components and systems . . . ." *Id.* He states that he consistently found sulfur and visual blackening present in samples from homes containing Chinese drywall. *Id.* at 6-7. Ehrsam broke down the effects of Chinese drywall into four categories: shell components; fixtures, furnishings, and equipment; personal property; and secondary impacts. *Id.* at 8-9. In the personal property category, for example, Ehrsam described the common effects of Chinese drywall on televisions, audio equipment, intercom systems, computers, phones, tablets, security systems, musical instruments, silverware, and jewelry. *Id.* Generally, these effects "include aesthetic damage, functionality issues or shortened life expectancy." *Id.*

But Ehrsam's Report [26-2] did not offer any specific conclusions as to Plaintiffs' home or personal property, and only discussed the effects of Chinese drywall generally. *See generally id.* He acknowledged in his deposition that he cannot state with certainty that the effects he described are present in this case or

that such effects were more likely than not present in Plaintiffs' home. Ehrsam Depo. Tr. [26-1] at 39. Ehrsam added that in order to render such an opinion he would have to inspect Plaintiffs' home, which he has not done. *Id.* at 20, 22-23, 35, 40. Ehrsam also stated that some of the effects highlighted in his report can have other causes, such as a salt-air environment. *Id.* at 30.

2.  <u>Shawn Macomber's Expert Report [26-4]</u>

Macomber has performed Chinese drywall inspections, consultations, and remediations since 2009. Macomber Report [26-4] at 4. Macomber was retained to offer expert opinions on the estimated remediation costs for each property involved in the *Bennett* litigation. *Id.* at 5. He or members of his staff visited each property, including Plaintiffs', and recorded data that was used to calculate remediation damages. *Id.* at 6-7. Macomber presumed total remediation of each property with Chinese drywall was required. *Id.* at 6. He based this presumption on the MDL Court's Findings of Fact and Conclusions of Law in another case involving Chinese drywall. *Id.*; *see also In re Chinese-Manufactured Drywall Products Liab. Litig.*, No. MDL 2047, 2017 WL 1421627, at *6-8 (E.D. La. Apr. 21, 2017) (hereinafter "*In re Chinese Drywall 2017*"). Macomber used the "R.S. Means" methodology, which accounted for location and the costs of labor and building materials to calculate a per-square-foot cost estimate to remediate a home. Macomber Expert Report [26-4] at 6. Macomber multiplied the under-air square footage of each property by the "R.S. Means" data for its location to arrive at a projected remediation cost. *Id.* at 7.

For Plaintiffs' home, Macomber estimated the total remediation cost to be $184,363.42. *Id.* at 14.

D.  Defendants' Motion [26] to Exclude

Defendants take the position that Ehrsam's testimony is "unreliable, speculative, and otherwise unhelpful to the trier of fact" because he failed to individually inspect Plaintiffs' property, he admits other factors could cause corrosion, and he cannot state with certainty whether Plaintiffs' home was damaged by Chinese drywall. Mem. [27] at 6-12. Defendants challenge Macomber's opinions on grounds that they are irrelevant because the economic loss rule precludes recovery of remediation damages in this case, and because his "R.S. Means" calculations are unreliable. *Id.* at 12-22. Defendants also contend that Macomber failed to define the extent to which Chinese drywall caused Plaintiffs' damages, and instead calculated remediation damages for repairing the entire home, as opposed to those parts of the home that contained Chinese drywall. *Id.* at 19-21. Defendants further assert that Macomber did not inspect or assess any personal property that was allegedly damaged. *Id.* at 19.

Plaintiffs respond that Defendants are improperly contesting their experts' factual findings, not their methodologies under *Daubert*. Resp. [32] at 3-5. As to the economic loss rule, Plaintiffs argue that the MDL Court has already held that the rule does not apply in Chinese drywall cases. *Id.* at 5-8 (citing *In re Chinese Drywall 2010*, 680 F. Supp. 2d at 791, 797-98). Plaintiffs maintain that Defendants' challenge to Macomber's damages estimates as to the entire home was already

7

litigated in the MDL Court, which held that complete remediation is required when Chinese drywall is present. *Id.* at 8-9 (citing Ex. [32-1] at 14, 17); *see also In re Chinese Drywall 2017*, 2017 WL 1421627, at *6-8. Plaintiffs insist that the MDL Court found Macomber's "R.S. Means" methodology to be "a generally accepted method of calculating building costs." Resp. [32] at 9 (quoting Ex. [32-1] at 23); *see also In re Chinese Drywall 2017*, 2017 WL 1421627, at *11. Finally, Plaintiffs argue that Ehrsam's opinions are relevant and probative to a jury considering the appropriate damages to award Plaintiffs because Defendants have already stipulated that Chinese drywall produces corrosive gas. Resp. [32] at 11.

In their Reply [34], Defendants argue that the MDL Court's prior ruling as to Macomber does not relieve Plaintiffs of their burden to establish causation and damages under Mississippi law in this case, and the MDL Court held that "prior settlement agreements or decisions regarding remediation are not applicable as law of the case" to relieve Plaintiffs of this burden. Reply [34] at 2-3; *see also In re Chinese Drywall Prod. Liab. Litig.*, No. MDL 09-2047, 2023 WL 2574110, at *3 (E.D. La. Mar. 20, 2023) (hereinafter "*In re Chinese Drywall 2023*"). With respect to the economic loss rule, Defendants argue that the law of the case is inapplicable here because there has been a subsequent ruling, *see id.* at 15-16 (citing *Wells v. Robinson Helicopter Co., Inc.*, No. 3:12-cv-564-CWR-FKB, 2015 WL 1189847, at *1-2 (S.D. Miss. Mar. 16, 2015)), and that as to Plaintiffs' claims for damages to "other property[,]" Macomber's report should still be excluded because he did not inspect or identify any damages to "other property[,]" *id.* at 3-5. Finally, Defendants highlight

8

that Plaintiffs admit Ehrsam only offers general testimony and thus his opinions should be excluded because he did not investigate Plaintiffs' property, nor did he offer specific opinions as to the extent of any damage to Plaintiffs' home. *Id.* at 8.

## II. DISCUSSION

A. Relevant law

Under Federal Rule of Evidence 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court set forth the analytical framework for determining whether expert testimony is admissible under Federal Rule of Evidence 702. 509 U.S. 579 (1993); *see also United States v. Tucker,* 345 F.3d 320, 327 (5th Cir. 2003). "Under *Daubert,* Rule 702 charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the

facts in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 592-93). Expert testimony must be both "relevant and reliable." *Id.* at 244. The *Daubert* considerations apply to all expert testimony, whether based on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. "The proponent of the expert testimony has the burden of establishing its admissibility." *United States v. Kuhrt*, 788 F.3d 403, 420 (5th Cir. 2015).

B.   Analysis

1.   Macomber's opinion should be excluded as unreliable because he fails to adequately support his conclusion that total remediation is required

While "the basis of an expert's opinion usually goes to the weight, not the admissibility, of the testimony, '[i]n some cases, however, the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012) (alteration in original) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). This is such a case. Macomber's Expert Report [26-4] is premised entirely on his assertion that total remediation is the only measure of damages for a home containing Chinese drywall. Macomber Expert Report [26-4] at 6. He bases this assertion on a 2017 Findings of Fact and Conclusions of Law made by the MDL Court involving different plaintiffs and different defendants. *See In re Chinese Drywall 2017*, 2017 WL 1421627, at *6-8 (finding–in a class-wide suit against defendants Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co., Ltd. (collectively "Taishan Defendants")–that based on the evidence presented to the Court in that case, total remediation was required in homes with Chinese drywall).

10

The MDL Court later stated that this finding did not apply beyond that grouping of cases, *see In re Chinese Drywall 2023*, 2023 WL 2574110, at *3, and in *In re Chinese Drywall 2023*, the MDL Court addressed the same argument advanced by Plaintiffs here, *id*. The plaintiffs in *In re Chinese Drywall 2023* argued that partial summary judgment was warranted in their favor as to the scope of remediation based on the MDL Court's earlier findings in *In re Chinese Drywall 2017*. *Id*. The MDL Court rejected this argument, stating that:

> Under the law-of-the-case doctrine, when "a court of competent jurisdiction decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1423 (5th Cir. 1995) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). [Plaintiff] argues that this Court's prior findings and conclusions in R. Doc. 20741 of this Multi-District Litigation ("MDL") are 'law of the case' and thus apply to the instant matter.
>
> But an MDL is not a class-action, and this is not the "same case." Although this Court did indicate in R. Doc. 20741 that it applied to "ALL CASES[,]" the correct understanding of that label is that the . . . document applied to all cases within the group for which the Court held the bellwether bench trial resulting in R. Doc. 20741's findings of fact and conclusions of law. Neither [plaintiff] nor the instant Defendants were party to that grouping, and [plaintiff] thus cannot subvert his burden of proof in this case by relying on this Court's prior scope of mediation rulings.

*Id*. The same reasoning applies here. Neither Defendants nor Plaintiffs in this case were parties to *In re Chinese Drywall 2017*, which involved the Chinese-based manufacture defendants, Taishan Defendants, and not the German-based Knauf Defendants. *Id*. at *1, *3. Thus, *In re Chinese Drywall 2017* is not law of the case, and Plaintiffs cannot bypass their burden to prove the proper scope of remediation necessary in this case. *Id*. at *3.

11

Likewise, Macomber cannot not merely rely on *In re Chinese Drywall 2017* to meet his burden of providing a reliable basis for his opinion that total remediation of Plaintiffs' home is necessary. *See Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 748-89 (5th Cir. 2018) (affirming a district court's exclusion of an expert because he did not explain the methodology in reaching his conclusion). Plaintiffs bear the burden establishing that their expert's methodology is reliable. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002) ("The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test."). Simply relying on a previous, non-binding court opinion, without more, is not sufficient to meet this burden. This is particularly true here, where "the proper scope of remediation to be applied should Plaintiffs prove Defendants' liability for their alleged damages" is a fact question, not a legal one. *In re Chinese Drywall 2023*, 2023 WL 2574110, at \*3. Macomber has failed to offer any factual basis or explanation for his conclusion that total remediation is necessary in this case, a conclusion that underlies the entirety of his expert testimony, and, more importantly, one that is unreliable because he "does not explain his methodology for reaching his conclusion[;]" instead he simply cites another court's factual findings in a different case. *Smith*, 909 F.3d at 749.

Simply put, the Court cannot permit Macomber to testify before a jury when the methodology upon which he bases his entire testimony is unreliable. To allow Macomber to offer such an opinion would serve only to confuse the jury, and as such his testimony would be substantially "more prejudicial than probative, making it

12

inadmissible under Fed.R.Evid. 403." *Viterbo*, 825 F.2d at 422. Macomber's testimony should be excluded at trial.[2]

2. <u>Ehrsam's testimony should be excluded as irrelevant, unreliable, and unhelpful to the trier of fact</u>

Regarding Ehrsam's testimony as to Plaintiffs' damages, Ehrsam cannot state that it is more likely than not that Chinese drywall caused Plaintiffs' injuries. *See generally* Ehrsam Expert Report [26-2]; *see also* Ehrsam Depo. Tr. [26-1] at 21-22 ("Q. And so, again, you can't say with any scientific degree of certainty whether any of the personal property in the plaintiff's homes, unless you inspected them personally, were affected by Chinese drywall? A. True."). Under the MPLA,

> [t]he plaintiffs bear the burden of proof on the issue of causation and must "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough."

*Rowan v. Kia Motors Am., Inc.*, 16 So. 3d 62, 66 (Miss. Ct. App. 2009) (quoting *Herrington v. Leaf River Forest Prods., Inc.*, 733 So. 2d 774, 777 (Miss. 1999)). In his deposition, Ehrsam acknowledged that he is unable meet this burden:

---

[2] Macomber's Report [26-4] also contains a glaring error, where he included photographs of the address sign, property at issue, and the Chinese drywall he allegedly found in each home. *See generally* Macomber Expert Report [26-4]. However, for forty-two of the properties he used the same three pictures. S*ee* Macomber Expert Report [26-4] at 23, 294, 296, 298, 302, 306, 308, 310, 312, 314, 316, 320, 322, 324, 326, 328, 332, 334, 336, 338, 344, 350, 352, 354, 356, 358, 360, 362, 364, 366, 368, 372, 376, 378, 382, 384, 386, 388, 390, 392, 394, 396. While this alone might not warrant exclusion, particularly because the property at issue in this case was not among the duplicates, such an error highlights the lack of overall reliability of Macomber's Expert Report [26-4]. This is especially true considering Plaintiffs' counsel was made aware of this error by another court and has not filed a supplemental expert report to correct it. *See Karpel v. Knauf Gips KG*, No. 21-24168-CIV, 2022 WL 16635584, at *11 (S.D. Fla. Nov. 2, 2022) (highlighting the errors in another case brought by Plaintiffs' counsel and finding that "[t]hese *obvious* errors in Macomber's letters leave the Court with little confidence in the reliability of his opinions" (emphasis in original)).

>Q. Can you – you cannot state with any degree of certainty that those secondary impacts that you've seen in the past also apply with respect to the individual plaintiffs in this case, true?
>
>A. I guess.
>
>Q. My point is that it can potentially apply, but you can't –
>
>A. But I can't state with certainty, true.
>
>Q. In fact, everything, in terms about your scientific opinions, you can't even say whether it's more likely than not, true?
>
>A. True.

Ehrsam Depo. Tr. [26-1] at 39. Ehrsam's testimony should be excluded because it is irrelevant in determining Defendants' liability for any of Plaintiffs' personal injuries under the MPLA, and would only serve to confuse the jury. Fed. R. Evid. 403; *see also Pipitone*, 288 F.3d at 245 (holding that a district court did not abuse its discretion in excluding an expert in a products liability action because his testimony on causation was unhelpful "to the fact-finder because of his inability to conclude that it was more likely than not that the [defendant's product] caused the infection in [plaintiff's] knee").

Plaintiffs assert that Ehrsam can still testify on general causation because Defendants have stipulated that Chinese drywall produces corrosive gas. Resp. [32] at 11. However, under *Daubert*, the Court must ask "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 593. Ehrsam not only cannot state with a reasonable degree of certainty

14

that Defendants' drywall caused Plaintiffs' injuries but acknowledges in his deposition that he cannot do so without investigating the property:

> Q. And what sources other than corrosive drywall can result in blackening of copper components?
>
> A. The most common is improperly treated well water; however, there are other things. It could be chemicals introduced by the homeowner. It could be dried traps, sewer gas, natural gas leaks, various chemicals that are stored in proximity to the affected items, natural subterranean gas emissions coming from the ground.
>
> Q. Could it also be – other than coming from the ground, if you lived in a – for lack of a better term – lived in a swampy area where sulfur gas is common, could that also be a factor in terms of weather and the extent of the type of corrosion in a property?
>
> A. Theoretically, yes.
>
> Q. And in terms of all these things, and corrosive Chinese drywall, because you have all those factors, how do you determine or rule out those factors?
>
> A. We take everything in consideration.
>
> Q. And I guess I'm trying to just ask the – the simplest form of the answer is that you do an inspection; is that right?
>
> A. Correct.
>
> . . .
>
> Q. And isn't it true that because of all the factors we talked about in terms of environmental factors, board ratio, location of the property, is that while you can determine certain items or components may be susceptible of corrosion due to uppercase KPT Chinese drywall, you cannot state with any degree of scientific certainty whether it was caused by KPT Chinese drywall or the extent of it in this particular case for these particular individuals?
>
> A. That would be true.
>
> . . .

15

> Q. Okay. Again, my question is in terms of these items, or any item, you can't determine whether an item is impacted by corrosive Chinese drywall without having physically inspected that item or viewing it; is that accurate?
>
> A. True.

Ehrsam Depo. Tr. [26-1] at 30-34, 40. By his own admission, Ehrsam cannot apply his methodology to this case without inspecting the property, which he has not done. *Id.* at 38. Without an inspection of Plaintiffs' property, Ehrsam's testimony cannot be reliably applied to the facts of this case, rendering his proffered testimony unreliable. *See Daubert*, 509 U.S. at 593.

In other words, Ehrsam cannot state that Plaintiffs' injuries were caused by Defendants' Chinese drywall, or to what extent any injury was caused by other sources. As another district court addressing his testimony has stated, this failure creates "a reasonable fear that a jury may be overly influenced by Ehrsam's qualifications," and disregard the causation standard, set in this case by the MPLA. *Karpel v. Knauf Gips KG*, No. 21-24168-CIV, 2022 WL 16635584, at *8 (S.D. Fla. Nov. 2, 2022). The issue before the jury is not whether Chinese drywall can cause corrosion, but whether it more likely than not caused corrosion in this case. *See Rowan*, 16 So. 3d at 66 (quoting *Herrington*, 733 So. 2d at 777). Ehrsam has not reliably applied his methodology to the facts of this case under that standard. Therefore, his opinions would not be helpful to the trier of fact in determining whether to award any damages to Plaintiffs, and they should be excluded.[3]

---

[3] Further, Plaintiffs bear the burden of establishing the admissibility of Ehrsam's testimony. *Kuhrt*, 788 F.3d at 420. Their argument primarily focuses on his qualifications, with very little discussion as

III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result. Defendants' Motion [26] to Exclude should be granted, and Plaintiffs' experts Howard Ehrsam and Shawn Macomber will be precluded from testifying at trial.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd.'s Motion [26] to Exclude the Expert Testimony of Howard Ehrsam and Shawn Macomber is **GRANTED**, and Plaintiffs' experts Howard Ehrsam and Shawn Macomber are precluded from offering expert testimony at trial.

**SO ORDERED AND ADJUDGED**, this the 13th day of May, 2024.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

---

to his methodology, its applicability in this case, or whether it is relevant and reliable. *See generally* Resp. [32] at 10-11. Plaintiffs only make the conclusory statement that his testimony is "relevant and probative to th[is] case[]" and is based "on his personal experience with the homes containing the defective Knauf drywall." *Id.* at 11. Such an argument is insufficient. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").